Our next case for argument is 23-1457 Skull Shaver v. Ideavillage Products. Mr. Solomon, please proceed. Good morning, Your Honors. My name is Ahmed Solomon from Solomon & Associates, appearing on behalf of the appellants. May it please the Court, we're here to argue that the lower court erred and abused its discretion in granting summary judgment on behalf of the appellees as defendants in this matter. The appellees in their brief correctly stated to the Court that the summary judgment standard, which the Court is well aware of, is not appropriate. If the jury could possibly find in non-movement's favor, which would, of course, be Skull Shaver. And here, we believe that a de novo review of both the patented product and the infringing product, when compared side-by-side, would reveal that summary judgment was an abuse of discretion. Now, we agree with Judge Padden in her summary judgment ruling that the fact that Judge Arleo had earlier in this same case denied the motion to dismiss and specifically found that it was plausible that the similarities would allow the consumer to be deceived does not necessarily negate summary judgment. However, in her ruling, what Judge Padden had stated was that despite the ruling by Judge Arleo, the fact that there was now a record led her to conclude that it was clear that summary judgment was appropriate. Well, what was the record? The record were competing expert reports. And the weight of the experts and their credibility is a jury question. Counsel, is it your view that a district court judge can never, in a design patent case, look at the two products side-by-side and grant summary judgment on the fact that the overall appearance is substantially different? No, Judge, that's not our argument, but we're saying for these products, in this case, it was inappropriate. So you do agree that there, even though it's a fact question, district court judges could look at two products and say the overall appearance is substantially different such that it doesn't need to go to a jury? I agree with that, Judge, but I also agree that your honors have a de novo ability to look at this and disagree with the trial court's conclusion in this regard. So let me ask you this. So it's a de novo. So instead of having just the district judge come to the conclusion at least five times that the overall appearance of the patent wasn't met, the three of us can do this. We can do the same thing now, or is the entire argument that the district judge shouldn't have done it because you had been able to find an expert who came on and essentially said there was infringement? It's our argument that Judge Patton erred by concluding that the two products are plainly dissimilar. And we believe that a de novo review will lead to that conclusion, and we believe that it's for the jury to make a determination whether or not, under the ordinary observer test, this was an infringing product or not. But you're agreeing we have the power to do the same test the district judge did? I would agree that this honorable court has the power to reverse her decision as being abusive discretion because a review of the record shows that it is not plainly dissimilar. Or not to. For example, if I look at it and I, by looking at it, find the same, at least one or more of the same dissimilarities, then it would be okay for us to affirm her. I would agree that the court has that authority, but I would ask the court to specifically scrutinize Judge Patton's ruling here. For example, she is saying in her ruling that the two products are plainly dissimilar at appendix page 13 in her ruling. I'm sorry to interrupt before you go into detail on that. Substantially similar to who? Is this the ordinary observer? Am I remembering that right? Yes. This would come under the ordinary observer test under Egyptian goddess. So under the ordinary observer, that is basically pretty much any observer. It's not an expert designer in the field, correct? Correct. It would be for a jury to determine whether or not an ordinary observer would find the same. So a jury would be anybody. What? Any ordinary person looks at this and can make the assessment. Correct. Why not the judge? Why not the district judge? Well, I agree that the judge has the authority to do that if they're plainly dissimilar as a matter of law when the facts are so clear. And the Judge Patton here said that it's clear that they are plainly dissimilar. But when you scrutinize how she reached that conclusion in her opinion, we think it's flawed and an abuse of discretion. So, for example, going back to what she says at appendix page 13 in her ruling. I guess here's your problem. You already told me it's to know that I'm an ordinary observer. And, hey, I'm ordinary and I'm an observer and I get to look at this. And here's what I look at. I look at the picture of the two things side by side. And I don't think they look at all similar. So why are we not just done? Who cares what she pulled out as the differences? I'm looking at it. Yours doesn't have the neck or theirs doesn't have the neck at all. The shape is different. The base is thicker and different. Who cares what specific differences she points to? If I get to look at it de novo, I don't think they look the same. So, Judge, under the law, minor differences are not to be considered. But you have to look at the overall appearance. I'm not looking at the overall appearance. I don't think they look the same. I don't think they're anywhere close to looking the same. I think they look really different. So is this case just over? Well, Judge, first of all, it would be my hope that Judge Albright and Judge Lori disagree with you. So, and if I may. Perhaps Judge Lori will. But if I may, for example, if we do scrutinize how she reached it, let's look at the two. And, Your Honor, Judge Moore, you say that you think that they look different. But, for example, she says that at page 11, she looks at figure one, and she says that they're different because one is egg-shaped whereas the other is a computer mouse shape. And she finds that they're clearly the same. Well, we would ask the court to look at figure one in her ruling. And to us, to our expert, more importantly, they're the same. How can you look at figure one and say… With all due respect, you already told me your expert doesn't matter because you already told me it's the ordinary observer, and I'm ordinary. But, Judge, an expert opinion does reach a conclusion about what an ordinary observer would reach, and they are experts for a reason. If the ordinary person should reject it. So the expert's opinion of what I think trumps what I think. No, I think that the expert opinion about what an ordinary observer would think, I think, is a difference from Judge Moore, for example, in my opinion. I would say it's as ordinary as she is. Well, I would argue respectfully, Judge. I would say more ordinary. That's true. I would respectfully argue, Judge, with all due respect, that Judge Albrecht, you, and, Your Honor, Judge Moore, are not ordinary observers because you are experts in this field. And you look at these issues all the time. That's true. What do you all know? Well… Shameless? No. You're more learned when it comes to comparing and contrasting products that are unpatented and alleged to be infringed than the typical juror would be, who is a consumer who would go online and look at these two products and do a comparison between the two. And they couldn't get confused. It would be our argument. It was the assessment of our expert. And he's an expert for a reason. His credentials are laid out in his reports. By the way, how does one become an expert in comparing things that the ordinary person can look at? If you put your expert down in front of me and move to establish him as an expert, what is this person's credentials to tell me what I, as an ordinary person, might think? Well, in our case, our expert is an industrial and design engineer who designs products of this type. And they are often tasked with making sure that a product does not infringe on a patented product. And I would also want to use my time to make another point, which was the affilee has characterized our argument on the competing expert reports as being one where any time you have competing expert reports, that automatically should create a bright-line rule that summary judgment is not appropriate. That is not our argument. What we are simply saying is, first of all, just on the regular standard for summary judgment, we believe that the district court erred by finding, as a matter of law, that there could not possibly be a jury that finds that these are not patently dissimilar. Setting aside from that, what we did is also we cited BK Lighting and we cited Crow for the proposition, I'm sorry, Crow, for the proposition that it was this court that previously stated, when you do have competing expert reports, ordinarily summary judgment is not appropriate. And we interpret that as this court saying the summary judgment standard, as high as it is, is even just a little bit higher than that when you have competing expert reports. Because it goes to the case of Hanna that that's up to our jury to determine which of these two experts we should believe, not for a judge on summary judgment. And if I may turn your question on its head, Judge, by your argument, as I understand it, because a judge is an ordinary observer, they can always make their own determination, as a matter of law, whether or not it's infringing. And therefore, what would be the need to ever have a jury who are also ordinary observers? I think with regard to design patents, having a district judge look down on what the chief did in grand summary judgment seems entirely appropriate to me. The judge believes that. Well, there are times where it's appropriate for a judge, as a matter of law, to state that factually I'm going to take my place of the jury and say that they are plainly dissimilar. But we think that if you look at the expert report, which, again, is a jury mission to determine, and if you just do a plain look at the side-by-side comparisons, the view from the top is the same. If you look at the silhouette of the view from the side, the concaves are nearly the same. People aren't going to think it's – No, you can't look at the concaves. The concaves were deemed to be a functional feature. So that can't be your distinguishing criteria, because that was deemed by the district court to be a functional feature and, therefore, outside of the detective's scope. Judge. Am I right about that? Well, I would concede that point, but I would also, just to go back to the nuts and bolts of how these two products look, if you look at figure one in our brief or if you look at the comparisons in the expert report, to me, they look exactly the same. To the judge who did the motion to dismiss, let's remember the arguments at the motion to dismiss before Judge Arleo were pretty much the same as the arguments made before Judge Padden. The only difference is, first of all, we had a change in judge, and if those two judges could disagree, as they seem to have done, then a jury could disagree. And the only reason Judge Padden disagreed is just, well, we'll have a record now, but that record was just these two competing expert reports and her own assessment by looking at this. And that would be inappropriate, because then what she's doing is stepping into the place of a jury. And that can only be done when they are plainly dissimilar. Now, we are not talking about two products that look totally different. As Judge Arleo held, it's plausible that the similarities would lead a jury to be deceived or an ordinary observer. And the only thing that changed since that ruling in this case, which was also binding in the underlying case, is a change of judge who says that it's clear to her that they're plainly dissimilar. Well, we don't believe that Judge Arleo found them to be plainly dissimilar when the same arguments were made. And after that, we had competing expert reports that were cement the fact. Let's assume it had been the same district judge. There was nothing – I mean, we had an argument this morning where a judge denied a motion to dismiss and granted a summary judgment, and we had to decide other issues about that. But there was nothing about the grant – I'm sorry, denial of the motion to dismiss – that would have precluded the same judge from doing the same thing that the different judge did here if the judge looked and believed in her opinion that there was no infringement, right? The motion to dismiss doesn't do anything for you, I don't think. But tell me why not. Well, Judge, I would just find that – Is it just because it was a different person? And you say if the two judges could disagree, then the jury could disagree. Well, that is partially our argument, and I would just focus on – and this is citing the language from the Appellee Brief. Again, the summary judgment standard, which this Honorable Court is well aware of, it's not appropriate if the jury could possibly find in the nonmovement's favor. And here we have language from the first judge saying that it's plausible that the – saying that it's plausible that the similarities would lead someone to be deceived. And that somehow got transferred into Judge Padden finding that there's no way a jury could possibly find in our favor because they're so plainly dissimilar. And if you look at the comparisons in the side-by-sides, in addition to the fact that we have an expert report agreeing with us, just look at the figure one. I would submit – looks the same. Figure two in my brief at page 13. Looks the same. Figure three from the top. Judge Padden had – Your Honor, on the volume of rebuttal time, did you want to save time for the rebuttal? Yes, ma'am. Okay, then you should stop now. Okay, thank you. Mr. Zia, please proceed. Good morning. May it please the Court. So I think there are three reasons you should affirm the district court's grant of summary judgment here. First, the district court compared the overall appearance of the two designs and found – and did the proper analysis under the ordinary observer test. Second, in performing that comparison, the court reached the correct conclusion that the overall appearance of the two designs are substantially distinct. And finally, it was proper for the district court to come to this conclusion despite the existence of competing expert reports. So in summary, they did it right, their conclusion was right, and the expert reports don't change that result. So I'll take those three things in turn. On the issue of did they compare the overall appearance, as Judge Albright mentioned earlier, there are at least five separate times in the district court's opinion where they say that they were analyzing the designs as a whole. I can read those sound bites into the record, but I will give you the appendix sites, which are appendix 18, lines 1 through 3, appendix 21, lines 2 to 4, appendix 21, lines 6 to 7, appendix 24, lines 4 to 6, and – right, that's five. And on top of that, the district court didn't just ask us to take their word for it by reaching those conclusions and using those buzzwords five times. They also did the comparison in their opinion, which you can find at appendix 18 and 19. So I don't really think there can be any dispute that the correct test was used here to analyze these designs. So then the question is, did they reach the right conclusion? And I think it's very clear that a side-by-side comparison of the designs here does show that the overall appearances are plainly dissimilar, such that an ordinary observer would not be deceived into purchasing one, supposing it to be the other, which is the standard from Egyptian goddess. If we look at, as Chief Judge Moore held up earlier, if we look at figure 5 of the patented design compared with a picture of the accused product, which can be found in the red brief at page 25, you can see that there are multiple differences that add up to a substantially dissimilar look. Four of those in particular were called out by the district court. The shape of the handles, which is the white portion in that figure. The elongated neck between the handle and the collar, which is the green portion. The collar below the neck, which is yellow. And the base, which is magenta. Am I correct that any one of those would be enough? I think it would depend on whether any one of them was substantial enough to give the overall design a feeling of substantial dissimilarity. So then we have, what do the expert reports matter to any of this? I do read what the issue is on appeal with regard to the expert reports to be found in the summary of the argument on page 4 of the blue brief, which is, I quote, that the district court incorrectly held that contradictory expert opinions does not create a genuine issue of material fact for the jury to resolve. So our feeling is that what's up on appeal is whether or not the existence of that report is a silver bullet toward a finding of, toward a defeat of summary judgment. And we believe that that's absolutely not the case. It's not what the law is, and it would not make practical sense. There are several cases where this court, two of the ones I have here, Judge Lurie was on the panel, Leonard Toys as an example, have found that in cases where there were competing expert reports, it was still permissible for the district court to find on summary judgment that there was no infringement. And just as a practical matter, if the court were to decide otherwise, it seemed to me that what that would do is it would mean that you could just hire an expert to defeat summary judgment on substantial similarity in any design patent case ever, and I don't think that would really be great for judicial economy. I'll rest there unless you all have any questions. Okay, thank you, Mr. Zeno. Thank you. Mr. Solomon, I'll restore to the panel. Thank you, Chief Judge. I do have some points that I'd like to make in rebuttal. First, despite my argument, opposing counsel on behalf of the police stood up and still argued that we are saying, that we are asking this honorable court to create a bright line rule saying that any time there is two competing expert reports, that should automatically mean summary judgment is denied. To be clear, that is not our argument. In fact, in our moving brief, in our appellant's brief, we specifically cite language of the court, this honorable court in Crown, as stating that it makes it usually inappropriate. Usually inappropriate. I concede that there are always competing expert reports. Here we have a situation where trial judge Padden gave zero, zero consideration to the fact that there is competing experts. Her opinion clearly says that's not important. We reject the argument that that has any weight whatsoever. But this honorable court had already said in Crown that it's even more heightened because it makes it usually inappropriate when you have competing experts. That is our argument. We are saying that it's a little bit higher than the regular summary judgment standard based on this honorable court's earlier ruling in cases like Crown and BK Leidig. But even if you want to set that argument aside, the regular standard for summary judgment we think would find in our favor. These are jury questions. So, for example, Judge Padden, and I wanted to address this earlier, in her ruling says that she finds figure one in a side-by-side to be different because one is egg-shaped and one is mouse, computer mouse-shaped. I would ask this court to look at figure one and ask yourself, do these two side-by-side pictures from figure one really look different as she concluded? And if you disagree on that, and this is one of the things that she cites as why she makes the conclusory declaration that I find it to be overall substantially dissimilar, if you disagree with her on that, that figure one is not different, that they are, in fact, both the same, even though she's using the language of idea village to say one is mouse-shaped and one is egg-shaped, ask yourself, are they really different? And if you look at it and think that figure one and these other figures that I do a side-by-side comparison of are not different, then you already disagree with her, at least on this much, and that creates an issue of fact. Okay. I thank both counsel. This case is taken under submission. Thank you.